4ws307<br>
154  582<br>
4ws307<br>
159  315

## Poth *against* Anstatt.

The recording of a conveyance within six months from its date, is essential to the validity of the title granted by it, against a subsequent *bonâ fide* purchaser for a valuable consideration.

ERROR to the District Court of *Allegheny* county.

Jacob Anstatt against Jacob Poth. This was an action of covenant to recover the balance of purchase money of several lots of ground, sold by the plaintiff to the defendant. Both parties claimed under John M'Kee. The following facts were agreed upon:

"On the 24th of August 1839, Jacob Anstatt and Jacob Poth entered into articles of agreement, by which the former covenanted to grant to the latter, lots No. 69, 70 and 71 of John M'Kee's plan of lots, adjoining Birmingham, &c. Poth agreed to pay to the plaintiff the sum of $600; $100 on the delivery of the possession, and $100 per annum, until the whole of the payments were completed. At the time of the sale made by the plaintiff to the

[Poth v. Anstatt.]

defendant, the lots were not fenced, were unimproved, and not to be distinguished by any marks upon the ground from other lots in the recorded plan. The defendant is now living on the lots, has fenced them in, and built and improved upon them. Previous to the 26th of July 1834, the title to the lots mentioned in the articles, was vested in John M'Kee, who, on the 26th of July 1834, conveyed them to Mellon. On the 25th of May 1838, Mellon conveyed to the plaintiff. The deed from M'Kee to Mellon was not recorded until the 2d of August 1837. On the 14th of June 1836, John M'Kee and Sarah his wife, executed a power of attorney to William Stewart, in which he authorized him " to sell and convey all the lands, tenements and heredita- ments, or any part thereof, belonging to the said John and Sarah, or to either of them, situate in the city of Pittsburgh, the borough of Allegheny, the borough of Birmingham, and in St. Clair town- ship, Allegheny county." The letter of attorney was duly acknow- ledged and recorded on the 15th of June 1836; and on the 5th of October 1836, William Stewart, by virtue of this power of attor- ney, conveyed to Thomas Clarke, by a deed of that date, " one lot adjoining Birmingham, No. 72; also, three lots adjoining the above, being No. 71, 70 and 69, each 20 feet front and 80 feet deep." This deed was recorded on the 6th of November 1836. The above deed was for the lots described in the articles of agreement between the plaintiff and defendant. It is admitted that the above lots lie in St. Clair township.

If, under this statement of the case, the court should be of opinion that the deed from Stewart, attorney in fact, to Thomas Clarke, vested in him the title to the property covenanted to be conveyed to the defendant by the articles of agreement, on which this action is brought, judgment is to be entered for the defendant, if otherwise, for the plaintiff; the sum due to be liquidated by the prothonotary."

The court below rendered a judgment, which was liquidated at $213.

*Craft,* for plaintiff in error, argued that the Act of 18th of March 1775, was positive in its requisition that a deed of convey- ance of land must be recorded, or it has no validity as against a subsequent purchaser without notice.

*Hamilton, contra,* contended that Stewart had no power to con- vey the lots which his principal had before parted with; and therefore the conveyance by him was a nullity. 7 *Johns.* 390; 5 *Johns.* 58; 3 *Watts* 68.

The opinion of the court was delivered by

Huston, J. (after stating the case.)—The decision of this case is not embarrassed by any question as to dependent and independent

[Poth v. Anstatt.]

covenants, or as to whether the defendant in possession can hold possession and refuse to pay the money. The naked question is, whether the deed of M'Kee and wife, by their attorney, Stewart, vested in Clarke a good title to the lots which Anstatt covenanted to convey to Poth. I will say perhaps it was entirely proper to put the case, at this time, on that issue. It seems Clarke was indebted, and his right has been sold on execution by the sheriff to Lawrence, who was about to bring ejectment; and the decision of this case may settle what could and perhaps would have been the ground of two or three other suits. I may also say it seems to be conceded on all hands that neither John M'Kee, nor his attorney, intended to convey what had been before sold. It was argued that John M'Kee, having sold and conveyed to Mellon, had no remaining right; and the conveyance to Clarke passed for nothing. And if it were not for the Act of Assembly of 18th of March 1775, which provides " that all deeds and conveyances, which from and after the publication of this Act, shall be made within this province, of or concerning any lands within this province, or whereby the same may be affected in law or equity, shall be acknowledged by one of the grantors or bargainors, or proved by one or more of the subscribing witnesses to such deed, before one of the Judges of the Supreme Court, or before one of the Justices of the Court of Common Pleas of the county where the lands conveyed lie, and shall be recorded in the office for recording of deeds, in the county where such lands, tenements or hereditaments, are lying and being, within six months after the execution of such deeds or conveyances : and every such deed or conveyance that shall at any time after the publication hereof be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valuable consideration; unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim."

Human ingenuity may raise perplexed abstract questions; but the ingenuity of the Court is not called into exercise, when a positive law gives the answer. Certainly, as soon as John M'Kee had executed and delivered a deed for these lots to Mellon, John M'Kee had no interest to convey to any other person; and certainly this continued to be the case for six months. To protect the purchaser, however, against an innocent purchaser without notice, the deed must within the six months be recorded; for his protection *in such case*, recording is as essential as proof of sealing and delivery by the grantor would be to protect him against the grantor. But it is not worth while to go into abstract reasoning on the subject. The mode of transferring property, and the effect of instruments which evidence such transfers, are in most countries the subject of positive law; and where the law provides

[Poth v. Anstatt.]

certain requisites at the time of executing the instrument which evidences the transfer, or certain other acts to be done afterwards, to give it effect or to continue its effect, those acts or things must be done, or the law is inoperative.   The courts cannot dispense with them: they must require them, or declare the law, for some reason, void.

An attempt was made to distinguish this case from a sale by John M'Kee himself, on the allegation that the power of attorney is special and not general;—it being to sell all property belonging to John M'Kee in the, &c.   Now, in the first place, the power is a general one, as to property located within the described limits; or there cannot be a general power.   An authority to do a particular act, or to do certain acts in a certain way, is a special power.   But it was said the lots in question did not belong to John M'Kee.   This objection would be as strong if John M'Kee had himself sold them.   It would then be said he had no title and could pass none.   In fact he did sell them.   A sale by attorney duly constituted, is a sale by the principal; the deed is his deed; and the title is no more derived from the attorney, than from a witness to the deed.

If Mr Mellon had recorded his deed, or by the decisions had taken and kept possession; or if, in any way, Clarke had notice of a prior sale by M'Kee, the law would not give the property to the second purchaser.   But I repeat, the mode of transferring real estate is, for the general good, regulated by statute, and wisely so. The difficulty arises from the negligence, or ignorance, or covetousness of the first purchaser; and he who occasions the loss ought to bear it.   The moment the deed to Clarke was recorded, the title of Mellon ceased to exist; it became null and void, and he conveyed no right or title to Anstatt, who of course. could not convey any right to Poth.   Mellon having neglected to record his deed, which by law was necessary to protect his title against a second purchaser for a valuable consideration, the title is vested in Clarke or his alienee; and the judgment must be rendered accordingly.

Judgment reversed, and judgment for the defendant.