## Hetherington *et al. versus* Clark.

An unrecorded deed is null and void, as against a *bonâ fide* purchaser of the same land, for a valuable consideration; and nothing can save it, but placing it on record before the second purchaser gets his deed there.

The recording of a subsequent conveyance, in which the first unrecorded deed is recited, is not notice to the second purchaser.

Where a party conveys a particular piece of land to one who neglects to record his deed, and subsequently conveys to another, by a general, indefinite description, all the lands, in the same place, to which he is entitled, and the last deed is placed on record; it is for the jury to say whether the land described in the first deed was intended to pass by the second.

This is a latent ambiguity, which may be explained by parol.

ERROR to the Common Pleas of *Schuylkill county*.

This was an ejectment, by James G. Clark against James Hetherington, John Woolley, and Patrick Burns, for a lot of ground in the borough of Pottsville, being part of a larger lot, numbered 34, in Potts's and Patterson's addition to the town of Pottsville.

On the 9th October 1830, Morgan P. Old conveyed to Joseph Bomeisler a lot on the south-westerly side of Market street, in the borough of Pottsville, containing in front on said Market street 34 feet, and in depth 114 feet. This included the *locus in quo*. Both parties claimed under Joseph Bomeisler.

The plaintiff gave in evidence a deed dated 27th August 1841, from Louis Bomeisler and wife and Joseph Bomeisler, to James G. Clark, the plaintiff, in consideration of $240, for "all lots, tracts, or pieces of land and reservations, situate in the borough of Pottsville, and county of Schuylkill, Norwegian township, state of Pennsylvania, which we now possess jointly and separately, and are entitled to, and all and every part thereof, and all our right, title, and interest of and in the same," &c.

This deed was recorded on the 13th June 1842, before the deed under which the defendants claimed.

The defendants claimed, under a deed dated the 31st December 1830, from Joseph Bomeisler to William L. Hirst, in consideration of $750, a lot of ground on the south-westerly side of Market street, containing in front 51 feet, and in depth 114 feet, being part of the lot conveyed to him by Morgan P. Old. This is the lot in controversy. This deed was not recorded until the 9th October 1847.

They also gave in evidence a deed dated 26th July 1837, from William L. Hirst to Thomas Harvey, for the *locus in quo*. This deed recited that the premises conveyed were part of a larger lot which Morgan P. Old, by deed of the 9th October 1830, conveyed to Joseph Bomeisler; and which Bomeisler, by deed of the 31st

December 1830, granted to William L. Hirst. It was recorded on the 17th March 1840, before the deed under which the plaintiff claimed.

On the trial in the court below, the defendants' counsel submitted the following points, upon which they requested the court to charge the jury:—

1. That the deed from William L. Hirst to Thomas Harvey, and the assignment from Harvey to Thompson for the land in dispute, reciting the deed from Joseph Bomeisler to Hirst, bearing date and having been recorded prior to the date and record of the deed from Joseph Bomeisler to the plaintiff (Clark), was notice to the plaintiff, and he cannot recover in this suit.

2. The deed from Bomeisler to plaintiff (Clark) is of itself notice to plaintiff that Bomeisler did not intend to convey, and did not, in fact, convey any ground to the plaintiff, which he (Bomeisler) had previously conveyed to any other parties, and of which the plaintiff took upon himself the risk.

3. The plaintiff, under the deed from Lewis Bomeisler and wife, and Joseph Bomeisler, did not take title to any portion of the land in question.

The court below (HEGINS, P. J.) answered these points in the negative, and charged the jury that, upon the whole evidence, the plaintiff was entitled to recover.

There was a verdict and judgment for the plaintiff below, whereupon the defendants removed the cause to this court, and assigned for error, the answers of the court below to the points submitted on the trial.

*Cumming* and *J. H. Campbell*, for the plaintiffs in error.—The deed under which the plaintiff below claimed title, is a peculiar one. It is cautiously drawn, by a party whose object was to incur no risk, and the fact is patent on its face, that Bomeislers did not intend to convey any portion of the ground in dispute.

This is not the case of Poth *v.* Anstatt, 4 *W. & S.* 307, on which the court below ruled the case. There the lots were conveyed by a special description. We are within the principle of Ludwig *v.* Highley, 5 *Barr* 140.

The next question is, whether Clark proved himself to be a purchaser for a valuable consideration. It is submitted that the recital and receipt in the deed of the payment of $240 are insufficient for this purpose: Union Canal Co. *v.* Young, 1 *Wh.* 431; Rogers *v.* Hall, 4 *Watts* 359, 362.

*Loeser* and *H. Fisher*, for the defendant in error.—The recording of a derivative conveyance is no notice that title has passed

out of the original grantor: Keller *v.* Nutz, 5 *S. & R.* 246; Lightner *v.* Mooney, 10 *Watts* 407; Felton *v.* Pitman, 14 *Geo.* 530.

Clark was a purchaser of whatever the record showed that Bomeisler was entitled to: Poth *v.* Anstatt, 4 *W. & S.* 307.

The question was not made in the court below as to the *bonâ fides* of Clark's purchase, and cannot be raised here: Baring *v.* Shippen, 2 *Binn.* 168; Wolverton *v.* Commonwealth, 7 *S. & R.* 273; Boggs *v.* Varner, 6 *W. & S.* 469; Wright *v.* Wood, 11 *Harris* 120.

The opinion of the court was delivered by

Woodward, J.—I entirely agree with the counsel for the defendant in error, that no point was made in the court below as to a valuable consideration paid by Clark for his purchase, and therefore the case is not to be ruled here on that point. The deed acknowledges a consideration of $240, and is *primâ facie* evidence of it. Unquestioned below, it is not to be questioned here; but is, for all purposes for which the case is in this court, conclusive evidence that Clark paid that sum for his purchase.

And his deed, dated 27th August 1841, and recorded 13th June 1842, would, by virtue of our recording acts, have preference over Hirst's deed from the same grantor, dated 31st December 1830, but not *recorded* till 7th October 1847, *if for the same land.* An unrecorded deed is null and void as against a *bonâ fide* purchaser of the same land for a valuable consideration, and nothing can save it but placing it on record before the second purchaser gets his deed there.

Nor was Clark affected by the recitations in the recorded deeds from Hirst to Harvey and from Harvey to Thompson, because there was nothing on record to lead him to these deeds. So far as the record showed, Hirst was not in the channel of the title at all, and therefore his recitations, no more than those of any other man, could affect a subsequent purchaser from the same grantor.

But there was a question raised upon Clark's deed which ought to have been submitted to the jury. That was, whether it related to any portion of the land in question.

The deed grants "all lots, tracts, or pieces of land and reservations, situate in the borough of Pottsville, and county of Schuylkill, Norwegian township, state of Pennsylvania, *which we now possess jointly, and separately, and are entitled to,* and all and every part thereof," &c.

Now at the date of that deed, the grantors, Louis and Joseph Bomeisler, did not possess, nor were they entitled to the lot in question, because Joseph, in whom the title then was, had sold and conveyed it to William L. Hirst, by a deed of 31st December 1830. As between them and Hirst, he was the owner of the lot,

[Hetherington *et al. v.* Clark.]

and their deed to him, though unrecorded, would estop them from claiming it.

Had they subsequently conveyed it to Clark by a specific description, as was done in Poth *v.* Anstatt, 4 *W. & S.* 307, the recording acts would have shut down upon it, and excluded Hirst and his alienees. But the description employed in their deed to Clark is most general and indefinite. Though large enough to comprehend, by possibility, this lot, it is impossible to say, as a conclusion of law, that they meant to comprehend it, or that the purchaser understood that he was buying it. Especially is this so, in view of the fact, that there was a reserved portion of the lot on which their conveyance to Clark could operate; and the further fact, that the consideration of the deed was, as compared with that mentioned in the deed to Hirst, not disproportionate to the reserved part.

We, therefore, think the learned judge erred, in ruling that this deed did necessarily convey to Clark the lot in question. Strictly construed, it should have been held not to convey it, for it was intended to operate only on what the grantors possessed and were entitled to and what they were not.

But the truth is, there is a latent ambiguity in the deed. It was necessary for Clark to resort to evidence *dehors* the instrument, to show that anything was conveyed. It was equally the right of the other party to show what that was. "The construction of written instruments is undoubtedly for the court, and the *quantum* of estate conveyed by a deed is referable to the judges alone. But where that estate is situate, what are its limits and contents, must frequently depend upon evidence *dehors* the writing; and thus it is often a pure question of fact, or of law and fact compounded, upon which a jury must be called to pass. A judge who evades to declare the meaning of a deed or other writing, commits an error; but if the instrument cannot be understood without reference to extraneous facts, the jury must judge of the whole." These observations of Judge BELL were applied in Hoffman *v.* Danner, 2 *Harris* 28, to a levy of an execution on real estate which was much more descriptive than the deed we have under consideration in this case.

We are far enough from wishing to enlarge the domain of parol evidence. We would that all men would express their agreements in writing; and when they have done so in terms that are intelligible, a jury is not to be permitted to set up some other contract for them, but are to administer that which the parties have written down as the court expounds it. But when the writing itself refers to a subject-matter, without defining it, which is outside of the instrument, the parties must expect a jury to be employed to ascertain it,

[Hetherington *et al. v.* Clark.]

under the direction of a court always jealous of evidence that touches a written instrument.

If, from all the circumstances bearing on the question, a jury should be convinced that this lot was not in the thought of the parties when they executed the deed of 27th August 1841—that the grantors did not intend to sell it, nor the purchaser to buy it —it would be a barbarous rule of law that would force a bargain on them, and compel them to defraud a prior purchaser. There is no such rule. Written instruments are not to be altered by parol, but latent ambiguities may be explained, in order that the court may give the instrument its intended effect.

The judgment is reversed and a *venire de novo* awarded.