### McBANE *v.* WILSON and others.

*(Circuit Court, W. D. Pennsylvania.* July 31, 1881.)

**1. ESTOPPEL—PURCHASERS.**

In an action brought by a subsequent purchaser for the recovery of land, *held*, that a prior purchaser is estopped from asserting his title, where, to the inquiry of such subsequent purchaser, whom he knew to be bargaining with the original owner for its purchase, he denies all interest in it. *Held, also*, that a judgment creditor of the prior purchaser, who urged such subsequent purchaser to purchase, stating that the title was clear, was also estopped.

In pursuance of written stipulation this case was tried by the court without the intervention of a jury.

The following facts are, therefore, found by the court.

(1) The plaintiff and the defendants in this case, respectively, claim title to the land in controversy through and under Jake Hill, who became seized thereof in fee-simple prior to October 31, 1867.

(2) By deed, dated and acknowledged October 31, 1867, Jake Hill sold and conveyed the land in controversy to Henry Metzger. On or about its date this deed was delivered by Hill to Metzger, but by agreement between them it was withheld from record. Said deed was not recorded until June 8, 1876, and then without the consent or knowledge of either of the parties to it. It was recorded at the instance of some unknown person who had obtained possession of it.

(3) The land in controversy is the undivided one-eighth part of certain tracts of timber land (described in the record in this case) situate in Jefferson county, Pennsylvania. The other owners of said lands were E. G. Carrier and S. S. Jackson. From the date of his deed from Hill down until the summer of 1872 he (Metzger) and his said co-tenants, E. G. Carrier and S. S. Jackson, were engaged in the business of "lumbering,"—running lumber *via* the Allegheny river to the Pittsburgh market,—and, in the prosecution of this business, Carrier and Jackson cut and removed timber from said tracts of land. At the time of the sale and conveyance to Alexander Smith, hereinafter men-

tioned, Carrier and Jackson were cutting timber from said lands and accounting to Metzger for his share. Henry Metzger lived in the city of Pittsburgh, and never was on said land, except on three or four occasions, in the course of said lumbering business, when he visited the lands and was there during a few days. He never took or held visible or actual possession of said land otherwise than as stated in this finding.

(4) On the seventeenth of May, 1873, Andrew F. Baum obtained a judgment in the court of common pleas of Allegheny county, Pennsylvania, against the said Henry Metzger, for the sum of $4,454.02, which judgment was duly transferred to the court of common pleas of Jefferson county, Pennsylvania, by filing therein, on May 21, 1873, a certified copy of the record; and on the fifteenth day of December, 1875, by virtue of an execution issued from the court of common pleas of Jefferson county on said judgment, the sheriff of Jefferson county sold all the right, title, and interest of the said Henry Metzger in and to the land in controversy to George W. Wilson, one of the defendants, and subsequently executed to him a deed therefor, which was duly acknowledged September 21, 1876. The defendants are in possession, and hold under this deed.

(5) By a deed bearing date June 12, 1873, and duly executed, acknowledged, and delivered on the sixteenth day of June, 1873, the said Jake Hill sold and conveyed the land in controversy to Alexander Smith for the consideration of $15,000, which said Smith then paid to said Hill in cash. This deed was recorded in Jefferson county, Pennsylvania, on the eighth day of September, 1874, in Deed Book, vol. 29, p. 260.

(6) At the time the said Alexander Smith bought and paid for said land and received his deed therefor, he did not know of the prior deed from Jake Hill to Henry Metzger, nor had he any knowledge that said Metzger had any title to said land.

(7) Said Smith had knowledge that Metzger was operating said land, but not how; and before he closed his bargain with Hill for said purchase, he (Smith) inquired of said Henry Metzger and was told by him that he had no interest in said land, nor any objection to his (Smith's) buying the same.

(8) Andrew F. Baum, the plaintiff in the above-mentioned judgment, asked said Alexander Smith to buy said land from Hill, and encouraged him to do so,—stating to Smith that the title was clear,—and he (Baum) was present when Smith paid his purchase money.

(9) The said Alexander Smith was a *bona fide* purchaser for a valuable consideration of the land in controversy, without notice that the said Henry Metzger had, or claimed to have, any title, interest, estate, or claim in or to the same, and without notice that said Andrew F. Baum had, or claimed to have, any lien against the same.

(10) Immediately after his said purchase said Alexander Smith entered into an arrangement with his co-tenant, S. S. Jackson, to cut timber upon said tracts of land and account to him (Smith) for his share, and this arrangement was carried out. After Smith's purchase Henry Metzger had no connection whatever with said land.

(11) By deed dated and acknowledged February 20, 1875, the said Alexander Smith sold and conveyed the land in controversy to the plaintiff, Dun-

can McBane. The consideration for this conveyance is stated in the deed to be $15,000, and the same is receipted for in the body of the deed and also at the foot thereof. This last-mentioned deed was recorded in Jefferson county,. Pennsylvania, on the twenty-sixth day of February, 1875, in Deed Book, vol. 30, p. 14.

*Brown & Lambie,* for plaintiff.

*Thomas M. Marshall, contra.*

ACHESON, D. J.    Under the Pennsylvania recording acts a deed of conveyance which is not recorded within six months after its execution is null and void as against a subsequent *bona fide* purchaser for a valuable consideration without notice, if the deed to the latter is first recorded.    1 Pur. 472–3, pl. 76; *Lightner* v. *Mooney,* 10 Watts, 407; *Poth* v. *Anstatt,* 4 W. & S. 307; *Hetherington* v. *Clark,* 30 Pa. St. 393; *Shaw* v *Read,* 47 Pa. St. 102.    Here the deed to Alexander Smith was recorded September 8, 1874, while that to Henry Metzger was not recorded until June 8, 1876.    Undoubtedly Smith was a *bona fide* purchaser for a valuable consideration, and he had neither actual nor constructive notice of Metzger's title.    The possession which affects a purchaser with notice must be clear, open, notorious, and unequivocal.    *Meehan* v. *Williams,* 48 Pa. St. 238, 241.    In my judgment, Metzger never had such possession as would visit a purchaser with constructive notice of his title.    The occupancy and acts of Carrier and Jackson were fairly referable to their own and not Metzger's title. But further discussion of this point is needless, for, in fact, before he concluded his purchase, Smith inquired of Metzger, and he, knowing that Smith was bargaining with Hill, informed Smith that he had no interest in the land.    Furthermore, Andrew F. Baum, the plaintiff in the judgment under which Metzger's supposed title was afterwards sold, requested and incited Smith to purchase from Hill, and stated that the title was clear.    Beyond all controversy, both Metzger and Baum were forever estopped from disputing Smith's title, or asserting any claim or lien in hostility thereto.

Is George W. Wilson, the sheriff's vendee, in any better position? What rights has he superior to those of the judgment creditor, upon whose execution he bought, and the defendant in the writ, whose title he acquired?    The title which Metzger had when the lien of Baum's judgment attached, was, at the best, a condition alone, liable to be swept away unless the recording acts were complied with.    *Souder* v. *Morrow,* 33 Pa. St. 83.    As a penalty for his neglect, the *law* extinguished Metzger's title, and, as a necessary consequence, the lien of Baum's judgment ceased.    If this were not so, the recording acts

would afford little protection to a *bona fide* purchaser, for by no vigilance could he guard against such secret liens. That a judgment creditor is not a purchaser of an interest in his debtor's land is declared in *Cover* v. *Black*, 1 Pa. St. 493. "He stands on the foot of his debtor," it is there said. Id. 495. Lien is an incident, but not the object, of a judgment, and the judgment creditor is not entitled to any advantage which his debtor had not. *Reed's Appeal*, 13 Pa. St. 476, 478.

A purchaser at a sheriff's sale is affected by the records and state of possession at the time when the sale takes place. *Gingrich* v. *Foltz*, 19 Pa. St. 38; *Stewart* v. *Freeman*, 22 Pa. St. 120. Now, at the date of the sheriff's sale on December 15, 1875, Metzger was not in possession, and his deed was not yet recorded. But Smith's deed was then on record, and had been for 15 months. The records, therefore, gave unequivocal notice to Wilson that under the recording acts Metzger's title was extinct.

It thus appearing that the title of Alexander Smith was good and valid, it is not necessary to consider whether the title of his vendee, Duncan McBane, the plaintiff, would not be good, even if that of Smith were impeachable.

Upon the facts found, I am of opinion that the plaintiff is entitled to recover; and, accordingly, the court do find in favor of the plaintiff, and that he recover the land claimed by him and described in this *præcipe*.

Let judgment be entered upon the finding of the court for the plaintiff for the land claimed by him and described in his *præcipe*, with costs.