## Levan et al. *versus* Millholland et al.

|114    49|
|159   151|

114        49
20 SC ²196

1. The joining of the widow and devisees of a testator with the administrator *c. t. a.* of a decedent in an action in which the plaintiff intends to charge the real estate of the decedent, appears to be conformable to the Act of February 24th, 1834; but if the correct practice be first to obtain judgment against the administrator and then bring in the widow and devisees on a writ of *scire facias*, the judgment obtained in this action and the proceedings thereunder are valid; for a mere mistake in practice, however gross, will not render a judgment void, nor will it affect the title of a purchaser at a sheriff's sale made by virtue of an execution issued upon such judgment.

2. An erroneous judgment or an irregular execution, not void, can be set aside only by direct and appropriate action by parties having an interest in the same, and not by a collateral attack under cover of another proceeding.

3. The return of service of a writ by the sheriff is conclusive, and cannot be contradicted or set aside in a collateral proceeding.

4. When the record of a judgment and proceedings thereunder which are in the line of a purchaser's title are regular, he has a right to accept all the essential averments of the record as true.

5. A return of *nulla bona* to a writ of *fieri facias* is not a prerequisite to the issuing of a writ of *venditioni exponas* for the sale of real estate.

March 3d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term 1886, No. 69.

This was an action of ejectment brought by Clinton Levan and wife, George H. Seidel and wife, Eva Miller and Mary Miller, against Mary A. Millholland. On petition, the heirs of James Millholland were admitted as defendants, viz.: Harriet A. Hunter, James A. Millholland, Fanny C. Reppher and husband, Henry Millholland, Paul D. Millholland, and John H. and Robert D. Millholland, minors, who have Henry A. Hoff for their guardian. The land in dispute was two lots in the city of Reading. Plea, not guilty. On the trial, before SASSAMAN, J., the following facts appeared:

The parties to the suit claimed title from the same source. The plaintiffs in error claimed under the will of Anthony F. Miller, who died in 1863, and devised the house and lot in which he lived, being the premises in dispute in this case, to his sister and his widow for life, and at the death of the survivor, "to the children of Albert Miller, now born, or hereafter to be born, and their heirs in fee." The sister and the widow of Anthony F. Miller are both dead, and the four sur-

4 AMERMAN.—4

viving children of Albert Miller now bring this action to recover the property.

The defendant in error claims under a sheriff's sale of the property, on a judgment obtained after the death of said Anthony F. Miller, in a suit brought by Solomon Ely, Sen., against his administrator, the widow and devisees.

The defendant offered in evidence judgment of Solomon Ely, Sen., *v.* Jacob Schmucker, administrator *cum testamento annexo* of A. F. Miller, dec'd, Maria C. Miller, Susan Miller, and the minor children of Albert Miller, to wit: Eva, Susan, William, Ellen and Mary, devisees of said A. F. Miller, dec'd, to be followed by the record of *fi fa.* and *vend. ex.*; to be followed by the sheriff's deed, conveying the premises in dispute, pursuant to a sale made by the sheriff on the *vend.ex.*, on the 17th of April, 1865, to Benjamin Tyson; to be followed by other conveyances, deducing the title from the grantee in the sheriff's deed to the defendants.

The plaintiff objected.

1. That the widow and devisees of Anthony F. Miller were joined as co-defendants with Jacob Schmuker, the administrator, in suit brought by Solomon Ely, Sen.

2. That a rule was entered in the cause, before the appointment or suggestion of a guardian *ad litem* for the minor children of Albert Miller.

3. That the record discloses the fact, that the summons was served on Francis Bright as guardian of the minor children of Albert Miller, and subsequently discloses the fact that Francis Bright was suggested as guardian of Eva, Susan, William, Ellen and Mary, the minor children of Albert Miller, after the service of the said summons.

4. The record discloses the fact that Francis Bright was not appointed guardian for Eva, Susan, William, Ellen and Mary Miller, the minor children of Albert Miller.

5. That there was no service on the next of kin of the minor children of Albert Miller.

6. That the return to the *fi. fa.* discloses the fact that the sheriff did not pursue the personalty, but that he immediately levied on the real estate, as shown by his return.

7. That the whole record on its face bears such strong evidence of fraud, as to render the judgment and consequent sale under it void *ab initio*.

8. Irrelevant and immaterial.

THE COURT:—I have no trouble on this question, nor had I at any time, except that in the suit of Ely against Schmucker, administrator, with will annexed of Anthony F. Miller, there was no judgment recovered *de bonis*, followed with a *sci. fa.*,

resulting in a judgment *de terris*, coupled with the objection that there was no guardian, but upon an inspection of the appearance docket, it appears that the sheriff made service upon Francis Bright, the guardian of the minor children of Albert Miller, which said minor children's names were made parties to the suit in their several names. This service would be good under the 83d section of the Act of the 13th of June, 1836; and the responsibility of Francis Bright after such service, assuming it to be as the record purports, would be fixed by the 84th section of the same Act. The suit necessarily being impetrated under the 34th section of the Act of the 24th of February, 1834, would be irregular under the decision of Atherton *v.* Atherton, 2 Barr, 112, inasmuch as the legal representative of the widow and devisees of Anthony F. Miller, deceased, were joined in one writ. But the service returned would be notice to a guardian of minor devisees, and if they were in any way injured by the judgment that followed, and the balance of the fund raised by the sale was transmitted by this court into the Orphans' Court for distribution, upon doctrines of equity and good conscience, the parties for whose benefit the fund was transmitted to the Orphan's Court would be estopped from setting up the irregularity whereby to defeat the title to the lands in question in the ownership of the purchasers at this remote period. The offer is admitted, and bill sealed for the plaintiff. (First assignment of error.)

The plaintiff offered in evidence the account of Jacob Schmucker, administrator *c. t. a.* of Anthony F. Miller, showing a balance in hand of $6,396.88; also, the Auditor's Report, in which it is shown that $2,071.78, the balance of the estate, was distributed absolutely to Maria C. Miller and Susan Keely. This for the purpose of showing that there were sufficient assets in the hands of the administrator at the time of issuing the *fi. fa.*, to satisfy the judgment obtained by Solomon Ely, Sen., against the administrator, widow and devisees of Anthony F. Miller, deceased. The Auditor's Report is offered for the purpose of showing that the money was distributed to the life tenants, and that not a dollar was invested or remained for the benefit and maintenance of the estate of Anthony F. Miller.

Objected to by the defendant, because, though the account may show the administrator, with the will annexed, had sufficient money to have paid this judgment of Solomon Ely, Sen., his right to do so, or the propriety of his doing so, would depend upon his having enough money in his hands to pay all other debts; the executor or administrator was not called upon to pay one debt in full out of the assets which he had,

and run the risk of being obliged to pay the other creditors a *pro rata* distribution out of his own pocket.

2. Because the decree of the Orphans' Court distributing this money can not be reviewed in this court.

3. Because, at the time of the said distribution this sheriff's sale had already been made; the title of Tyson, the defendant's predecessor, had already been fixed in him, and the disposal of the money subsequently could not divest the rights already vested.

4. Because the testimony is generally irrelevant and inadmissible.

THE COURT: The objections are sustained, and a bill sealed for the plaintiff. (Third assignment of error.)

The plaintiff proposed to show, by the clerk of the Orphans' Court, that a personal examination of the records of the Orphans' Court show that the first and only guardian appointed for Susan, Eva, William, Ella and Mary Miller, the minor children under fourteen years of age of Albert Miller, was made September 22, 1865, on the petition of Albert Miller, the father. This for the purpose of showing that at the time of the bringing of the suit by Solomon Ely, Sen., against the administrator, widow and devisees of Anthony F. Miller, the minor children of Albert Miller, who were under fourteen years of age, were without a guardian.

Objected to by the defendant, because the testimony is offered to contradict the facts set forth in the return of the sheriff of the service made of the summons in the action of Solomon Ely, Sen., against the administrator, with the will annexed, and which the defendants have offered in evidence.

2. Because it is generally irrelevant and inadmissible.

THE COURT: These objections are sustained; the offer is rejected, and a bill sealed for the plaintiff. (Fourth assignment of error.)

In the general charge, the court instructed the jury *inter alia,* as follows:

It appears by the evidence given on the part of the defendant, that when Anthony Miller died he had debts, and that there was a recovery of a judgment against him, of which we held that his heirs had the legal and required notice. That judgment then became a *judgment de terris,* and upon that the land was sold, upon a *fi. fa.* and *vend. ex.,* by the sheriff, and Benjamin Tyson became the purchaser. That sheriff's sale divested all the title that Anthony F. Miller had in it, because it was a sale for the payment of his debts by legal process, and that legal process remained unquestioned up to this day. So that the title that Benjamin Tyson got was a good title, against the title that the debtor, Anthony F. Miller, had in

his lifetime.   For the title of Anthony F. Miller was divested by a sale for the purpose of paying his debt.   There is then nothing left for his devisees, and there being nothing left for them, the title was good in the purchaser at the sheriff's sale. (Fifth assignment of error.)

\*    \*    \*    \*    \*    \*    \*    \*.

The widow, who is made the defendant here by an arrangement with the children, who are the landlords, is left in possession as a tenant; and here this day the landlords have filed a petition, and have been allowed by this court to be joined with Mary Millholland, the tenant in possession, so that all those who have any right to the title, on the part of the defendant here, are of record.   Their title is a stronger title in the law than the title set up by the plaintiff, which in law at present would amount to no title; and their title amounting to nothing, they could not recover under the rulings that we have been obliged to make.   Your simple duty, therefore, gentlemen, is to render a verdict generally in favor of the defendants.   (Sixth assignment of error.)

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ and filed *inter alia,* the above assignment of error.

*E. H. Deysher,* for plaintiff in error.—1. The proceedings were irregular in that the widow and devisees were originally joined as defendants with the administrator in the suit brought by Solomon Ely, Sen.: Atherton *v.* Atherton, 2 Barr, 112; Murphy's Appeal, 8 W. & S., 168.

2.  The record of the suit, contained in the first assignment of error, shows upon its face that a rule to arbitrate was taken in the action before a guardian was appointed for the minor children of Albert Miller, and before application to the court for the appointment of such guardian, and that at no time during these proceedings was there an appearance for them by guardian or otherwise; and that it does not show that at any time was there a guardian appointed for them.   This method of procedure is in direct violation and utter disregard of the provisions of the Act of June 13th, 1836, P. L. 557, and consequently the judgment obtained thereon was void as to them.   To hold it otherwise were to permit that to be done, which manifestly this Act was intended to guard against and prevent.

3.  The sheriff's return was untrue, as Francis Bright was not guardian of the minor children of Albert Miller.

Meredith *v.* Shewall, 1 Penrose & Watts, 495, decides that "the general rule is, that a sheriff cannot be admitted to con-

[Levan et al. *v.* Millholland et al.]

tradict his return ; as to himself, it is conclusive, but it is not, under all circumstances, conclusive as to others."

In the case of Coulter *v.* Selby, 3 Wright, 358, it is decided that "the widow and heirs are regarded in the light of terre tenants, for the law of descent casts the title upon them."

A terre tenant may contradict the sheriff's return : Mitchell *v.* Hamilton, 8 Barr, 486 ; Dengler *v.* Kiehner, 1 Harris, 38 ; Drum *v.* Kelly, 10 Casey, 415.

The record shows that there was no return of *nulla bona*, which we contend is necessary to ground proceedings against the real estate of the defendant.

All these defects of the proceedings appearing upon the face of the record, the purchaser of the real estate at a sheriff's sale, based upon a judgment obtained thereon, was bound to take notice of them.   For it has been held by this court, in Smith *v.* Painter, 5 S. & R., 223, that the rule of *caveat emptor* applies to sheriff's sales ; that in a sheriff's sale there is no warranty of title : Fellerman *v.* Murphy, 4 Watts, 424 ; Executrix of Chrisman *v.* Evans' Adm'r, 13 S. & R., 14 ; Riland *v.* Eckert, 11 Harris, 115.

*Cyrus G. Derr* (*Louis Richards* with him), for defendants in error.—1. The joining as defendants, of the devisees with the administrator *cum testamento annexo* in the action of Solomon Ely was, under the provisions of the Act of February 24th, 1834, § 34, Purd. Dig. 530, pl. 112, correct and proper.

2. A mistake in practice will not render a judgment void, nor will it avoid the title of a purchaser at a sheriff's sale held pursuant to process issued upon such judgment : Freeman on Judgments, § 135 ; Spear *v.* Sample, 4 Watts, 376 ; McFee *v.* Harris, 1 Casey, 102 ; Wilkinson's Appeal, 15 P. F. S., 189 ; Atkinson *v.* Tomlinson, 10 Norris, 284 ; Henry *v.* Chambers, 7 Out., 172.

3. The return of the sheriff that he had served the summons personally on "Francis Bright, guardian of the minor children of Albert Miller," etc., was conclusive of the fact that Francis Bright was the guardian of the said children, and the said return cannot be contradicted : Kleckner *v.* County of Lehigh, 6 Wh., 66 ; Kennard *v.* R. R. Co., 1 Phila., 41 ; Patton *v.* Ins. Co., 1 Phila., 396 ; Commonwealth *v.* R. R. Co., 1 Pears., 341 ; Mentz *v.* Hamman, 5 Whar., 150, and Flick *v.* Troxsell, 7 W. & S., 65.

In the case of Zion's Church *v.* St. Peter's Church, 5 W. & S., 215, the court repeated their ruling in Kleckner *v.* County of Lehigh, adjudging that, "the sheriff's return of service of a writ is conclusive."

In the case of Benwood Iron Works *v.* Hutchinson, 12 W.

N. C., 495, this court declared that, "as the return must be considered as conclusive between the parties to the action, it is error to set aside the service upon extraneous evidence."

In accordance with these principles, is the practice in Pennsylvania: Troubat & Haly's Practice, § 260.

A return of *nulla bona* to the writ of *fieri facias* was not prerequisite to the issuing of the writ of *venditioni exponas* for the sale of the real estate.

Mr. Justice STERRETT delivered the opinion of the court, October 4th, 1886.

Both parties to this action of ejectment claim under Andrew F. Miller, who, in 1863, devised the land in controversy to his wife and sister for their joint lives and the life of the survivor, with remainder in fee to the children of Albert Miller, who were then minors, but are now adult plaintiffs, claiming as devisees in remainder. The defendants claim through a sheriff's sale on a judgment against the administrator *de bonis non*, etc., of Andrew F. Miller, the devisor, with the notice to his devisees for life and in remainder.

In the suit against the administrator, the summons was returned by the sheriff, served on the administrator, *de bonis non*, etc., the life tenants, and "Francis Bright, guardian of the minor children of Albert Miller." Arbitrators, chosen after due notice, awarded in favor of plaintiff and against the defendants in that suit. The award, unappealed from, had all the effect of a formal judgment *de terris*. A writ of *fieri facias* was issued, and in due .course a writ of *venditioni exponas* was issued, on which the property was sold to Benjamin Tyson for $7,800. The purchase-money having been paid to the sheriff, part of it was applied to judgments obtained against Andrew F. Miller, the devisor, in his lifetime, and the residue was ordered paid to the administrator *de bonis non*, etc., upon giving bond, as required by Act of Assembly.

Under the devise to them in remainder, plaintiffs, of course, have a *prima facie* case; but defendants, having acquired title by mesne conveyances from the purchaser at sheriff's sale, contend that they are invested with such title as the devisor had·at and immediately preceding his decease, and consequently the title, which otherwise would have been complete under the devise, was divested by the sheriff's sale. This position is undoubtedly correct, unless there is some radical defect in the judgment itself, or in the proceedings thereunder, that rendered the sheriff's sale not merely irregular and voidable, but absolutely void.

It is claimed by plaintiffs, in the first place, that they were improperly joined as defendants in the original suit against

[Levan et al. *v.* Millholland et al.]

the administrator, *de bonis non*, and for this they rely mainly on what was said in Atherton *v.* Atherton, 2 Pa. St., 112, as to the proper practice in such cases. The Act of 1834 provides that, "in all actions against the executors or administrators of a decedent, who shall have left real estate, where the plaintiff intends to charge such real estate with the payment of his debts, the widow and heirs or devisees, or the guardian of such as are minors, shall be made parties thereto," etc. The course for such in the case at bar would appear to be strictly conformable to the Act; but, assuming the correct practice to be as stated in the case above cited, making the devisees defendants with the administrator *de bonis non*, was at most an error in practice which might have been corrected, but which, passing unnoticed, did not affect the validity of the judgment. The court undoubtedly had jurisdiction of all the parties as well as of the subject matter; and conceding, for the sake of argument, that there were irregularities, or even errors, that might have been corrected if they had been complained of in time, it does not follow that either the judgment or the proceeding thereunder was void. That question has been so often considered and uniformly decided against the contention of plaintiffs, that it is useless further to discuss the matter.

Another ground of objection to the judgment, not apparent on the face of the record, is that the devisees in remainder—the present plaintiffs—had no guardian at the time the summons, according to the return of the sheriff, purports to have been served on "Francis Bright, guardian," etc., and they proposed to prove in direct contradiction of the sheriff's return, that such was the fact. It is scarcely necessary to say that the conclusive effect of the sheriff's return cannot be evaded in that way. If it could, what security would there be in titles based on sheriff's and other judicial sales? The most that can possibly be said of the judgment, on which the property was sold, is that it might have been reversed, if its regularity had been called in question; but, even the reversal of the judgment after the sale could not affect the title of defendants as purchasers at the sheriff's sale. The Act of 1705, provides, "That, if any of the said judgments which do or shall warrant the awarding of the said writs of execution, whereupon any lands, tenements or hereditaments have been or shall be sold, shall at any times hereafter be reversed for any error or errors, then and in every such case, none of the said lands, tenements or hereditaments, so as aforesaid taken or sold, or to be taken or sold upon executions, nor any part thereof, shall be restored, nor the sheriff's deed or delivery

[Levan et al. *v.* Millholland et al.]

thereof awarded; but, restitution in such cases only of the money or price for which such lands were or shall be sold."

The record of the judgment in question discloses nothing that was clearly erroneous, certainly nothing that rendered the judgment void, or insufficient to sustain the execution. Being thus regular on its face, the purchaser was not bound to inquire as to the truth of what is there averred. He had a right to accept all the essential averments as verity. In Spear *v.* Sample, 4 Watts, 376, it was adjudged that "an execution issued upon a judgment after the death of the defendant, is not absolutely void, but only voidable, and a sale of land upon such execution vests in the purchaser a good title." In the interest of debtors and on grounds of public policy, courts have always inclined to sustain judicial sales, especially when made under the judgments or decrees of courts possessing general jurisdiction of the subject and after being fairly carried into execution. After acknowledgment of a sheriff's deed in open court the title of the sheriff's vendee cannot be affected by mere irregularities however gross: McAfee *v.* Harris, 25 Pa. St., 102. The same principle is reiterated in many cases, among which are, Wilkinson's Appeal, 65 Pa. St., 189; Atkinson *v.* Jawlinson, 91 Id., 284; Henisly *v.* Chambers, 103 Id., 172. In Wilkinson's Appeal *supra,* an execution had been issued on award of arbitrators immediately after filing the award and before the time for appeal had elapsed, and the court in sustaining the sheriff's sale made by virtue of the execution said, "it is settled if anything can be, that an erroneous judgment or an irregular execution—not void—can be set aside only by direct and appropriate action by parties having an interest in the same and not by a collateral attack under care of any other proceeding.

A return of *nulla bona* to the writ of *fieri facias* was not a prerequisite to the issuing of the *venditioni exponas.*

It is unnecessary to notice the remaining specifications of error. There is no merit in either of them.

Judgment affirmed.