## Pa. Department of Transportation
## v. Mendelsohn

*Thomas J. Hines,* for plaintiff.
*John R. Howland,* for defendant.

GORDON, *J.,* November 21, 1984—This action in equity was instituted by plaintiff, the Department of Transportation of the Commonwealth of Pennsylvania (PennDOT) seeking to enjoin defendants Jules and Patricia Mendelsohn from collecting rentals from the occupants of the premises at 4726 Roosevelt Boulevard in Philadelphia, Pa., defendants William and Delores Brown. The main thrust of this case centers around who owns the questioned premises situated at 4726 Roosevelt Boulevard. PennDot claims exclusive interests and title to the property and building based upon its condemnation in 1970. On the other hand, the Mendelsohns assert

that they were bona fide purchasers when they acquired the property at the sheriff's sale and title, therefore, vests with them.

At the trial held on May 21, 1984, the parties agreed to a joint set of stipulated facts, exhibits, and trial memorandum were submitted.

In essence, the stipulated facts disclosed that the Commonwealth caused to be filed in the Recorder of Deeds Office in Philadelphia County a set of Highway plans proposing to construct the, "Northeast Freeway." The Commonwealth filed a declaration of taking pursuant to 25 P.S. §1-402 on June 10, 1970. Notice of condemnation and plans were filed in the deed book JRS 719, pages 299-318 inclusive on the same day. According to the declaration of taking, PennDOT specified that the, *"nature of the title hereby condemned is an easement for highway purposes"* on the premises of 4726 Roosevelt Boulevard. (Emphasis added.)

More than two years later, a lease agreement was executed between the Commonwealth and defendants William and Delores Brown who were tenants in the property. The Browns agreed to pay $120 a month in rent to the Commonwealth. On January 20, 1975, the Commonwealth paid to the then owners of record, Charles and Dorothy Schuler, $23,500 for the two and a half story dwelling house and for the temporary easement of the land (this sales agreement may be reviewed on the settlement sheet marked Exibit 5). The said payment was made pursuant to a stipulation entered into between the owners of record and the Commonwealth. This stipulation was never filed the prothonotary's office or the recorder of deeds. Further, no record was ever filed evidencing any compensation paid for the said building.

On or before May 7, 1979, the Commonwealth learned that the questioned property was to be sold at a sheriff's sale in Philadelphia due to unpaid real estate taxes. No efforts were made to stay or postpone the sheriffs sale, nor did the Commonwealth attempt to correct the records of the City of Philadelphia, to reflect the nontaxability status of the subject premises. At the sheriff's sale on June 4, 1979, an announcement was made before the bids opened stating that the premises was "subject to the Department of Transportation's easement." After bidding on the property, the Mendelsohns succeeded in purchasing it.

Approximately one month later, the Mendelsohns and the Browns entered into a lease agreement. Immediately the Browns ceased making monthly rental payments to the Commonwealth, and began to make payments to the Mendelsohns.

This court is being asked to decide whether the rights acquired through eminent domain are superior to those received by a subsequent bona fide purchaser at a sheriff's sale?

Since condemnation proceedings are statutory in nature, we must examine the Eminent Domain Code that details the procedures necessary in condemning property.

Section 402 of the Eminent Domain Code, 26 Pa. C.S. §1-402 provides inter alia:

(a) Condemnation, under the power of condemnation given by law to a condemnor, which shall not be enlarged or diminished hereby, shall be effected only by the filing in court of a declaration of taking, with such security as may be required under section 403(a), and thereupon the title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of such filing, and the condemnor shall be entitled to possession as provided in section 407.

(b) The declaration of taking, shall be in writing and executed by the condemnor shall be captioned as a proceeding in rem, and shall contain the following:

(1) The name and address of the condemnor.

(2) A specific reference to the statute, article and section thereof under which the condemnation is authorized.

(3) A specific reference to the action, whether by ordinance, resolution or otherwise, by which the declaration of taking was authorized, including the date when such action was taken, and the place where the record thereof may be examined.

(4) A brief description of the purposes of the condemnation.

(5) A description of the property condemned sufficient for the identification thereof, specifying the city, borough, township or town and the county or counties wherein the property taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in such county in accordance with section 404 of this act.

(6) A statement of nature of the title acquired, if any.

(7) A statement specifiying where a plan showing the condemned property may be inspected in the county in which the property taken is located.

(8) A statement of how just compensation has been made or secured.

(c) The condemnor may include in one declaration of taking any or all of the properties specified in the action by which the declaration of taking was authorized. The prothonotary shall charge one fee

for filing each declaration of taking, which shall be the same regardless of the number of properties or condemnees included therein.

(d) The condemnor shall file within one year of the action authorizing the declaration of taking, a declaration or declarations of taking covering all properties included in such authorization not other wise acquired by the condemnor within such time.

As required by the code, PennDOT declared the nature of the title to be condemned. Count 7 of the declaration of taking states: "The nature of the title hereby condemned is an easement for highway purposes." (See, Exhibit 2.)

PennDOT clearly acquired only an easement, which is an interest in land. However, PennDOT maintains that it also acquired title in the two and one-half story building because the highway plans in 1968 indicated that the building was to be reduced to "none." But to determine the nature and extent of the interest taken in particular situation, the resolution of condemnation and the plans attached thereto must be examined in conjunction with relevant statutes. Petition of Cavalier, 408 Pa. 295, 183 A.2d 547 (1962). It is well settled that statutes concerning eminent domain are to be strictly construed. Pagni v. Commonwealth, 179 Pa. Super. 213, 116 A.2d 294 (1955); Ferree v. N. Y. State Natural Gas Corp., 399 Pa. 188, 159 A.2d 677 (1960). PennDOT stated in its condemnation petition that the nature of the title acquired was an easement. PennDOT must be bound by its statement despite possible plans two years prior to reduce the building to "none." PennDOT cannot expand its interest when the eminent domain statute requires the condemnor to state the exact nature, extent of the

title acquired through condemnation,[1] as well as description of the property condemned.[2]

Next, plaintiff asserts that the Mendelsohns were placed on notice at the sheriff's sale of PennDOT's interest in the building, and that the Mendelsohns should not be afforded the protection of a bona fide purchaser.

To be a bona fide purchaser, one must be without notice of the prior equities of others. Such notice may be either actual or constructive. Sidle v. Kaufman, 345 Pa. 549, 29 A.2d 77 (1943); Long John Silver's, Inc. v. Fiore, 255 Pa. Super. 183, 386 A.2d 569 (1978). It is the duty of a prospective purchaser of land to make a proper inquiry as to the status of the title of his vendor and one who neglects to make an inquiry where it is a duty, is not a bona fide purchaser. Lund v. Heinrich, 410 Pa. 341, 189 A.2d 581 (1963). However, a purchaser of land is not deemed to have notice of matters which lie beyond the range of an inquiry and which reasonableness might not disclose. Where a purchaser could not have learned the facts by an inquiry, he is not prejudiced because he did not inquire. Hetherington v. Clark, 30 Pa. 393 (1858); Appeal of Lower, 1 Walk. 404, 5 Leg. GAZ 45 (1873).

Here, Mendelsohn would definitely have notice of the easement interest held with PennDOT, however, not of the purchase by PennDOT of the dwelling house from the owners of record.

Prior to opening the bids in the subject property at the sheriff's sale, it was announced that the property was subject to a Department of Transportation's easement. This was the only statement made concerning the property. Thus defendants were

---

1. 26 Pa. C.S. § 1-402(6).
2. 26 Pa. C.S. § 1-402(4).

charged with notice of PennDOT's easement interest. But can defendants be charged with notice of the Commonwealth's unrecorded stipulated agreement which shows that the Commonwealth paid the owners of record just compensation for the two and one-half story dwelling? We think not. The declaration of taking was not all inclusive.

The Commonwealth learned that the property at 4726 Roosevelt Boulevard was to be sold at a sheriff's sale in Philadelphia, approximately one month before the sale. Notification was given by the Commonwealth to the City of Philadelphia of its temporary easement for highway purposes, but not of the stipulation agreement. It would seem that this was a perfect time to inform the City of Philadelphia of the stipulation agreement giving the Commonwealth title to the dwelling and that PennDOT is exempt from any taxation. But this was not done. The Commonwealth allowed the sale to proceed without correcting the record or filing the stipulation.

PennDOT argues that since an announcement was made concerning its easement, the Mendelsohns had notice and a duty to make reasonable inquiries as to the status of the title of their prospective vendor (i.e., the sheriff). However, had the Mendelsohns inquired, what would they have found? Only the declaration of taking stating the Commonwealth's temporary easement for highway purposes.

The rights of the parties under a sheriff's sale depend upon the record at the time of the sale. Colonial Trust Co. v. Lincoln Drive Apts. Corp., 299 Pa. 117, 149 Atl. 165 (1930). The only encumberance at the time of the sheriff's sale was the Commonwealth's temporary easement. The deed received by the Mendelsohns from the sheriff conveyed to them "ALL THAT CERTAIN: Lots or pieces of ground

with the buildings and improvements thereon erected." In Pennsylvania, a purchaser at a sheriff's sale is within the protection of the recording acts. Bradley v. Price, 396 Pa. 234, 152 A.2d 904 (1959). An innocent purchaser takes free of equities, unrecorded conveyances and infirmities of which he has no notice, actual or constructive. Smith v. Miller, 296 Pa. 340, 145 Atl. 901 (1929). In the absence of knowledge or notice of secret equities an innocent purchaser ordinarily may rely upon the record and is not bound to look beyond it. Herring v. Chamber, 103 Pa. 172 (1883). The innocent purchaser has a right to accept all its essentials as true. Levan v. Milholland, 114 Pa. 49, F.A. 194 (1886). The primary object of recording deeds as stated by the Supreme Court is to give public notice in whom the title resides so that no one may be defrauded by the deceptious appearances of title. Mancine v. Concord-Liberty Savings and Loan Association, 299 Pa. Super. 260, 445 A.2d 744 (1982).

The stipulation agreement should have been recorded or the status of the Commonwealth in regards to the property should have been made known to the City of Philadelphia before the sale. Failing to take any action to notify potential purchasers was inexcusable. Thus, the Mendelsohns are deemed to have no notice of the unrecorded stipulated agreement which lies beyond the range of any reasonable inquiry or investigation they might have made. Hetherington v. Clark, supra.

Based upon the foregoing, plaintiff's petition to quiet title should be dismissed and judgment is hereby entered for defendants.

## ORDER

And now, this November 21, 1984 plaintiff's petition to quiet title is dismissed and judgement is en-

tered for defendants Jules Mendelsohn and Patricia Mendelsohn, his wife, against plaintiff the Commonwealth of Pennsylvania Department of Transportation.